BUCKBEE vs. THE UNITED STATES INSURANCE, ANNUITY AND TRUST COMPANY.

A policy of life insurance contained a provision that in case the quarterly premiums should not be paid on the days specified, the policy should be void; but that in such case it might be renewed, at any time, on the production of satisfactory evidence as to the health of the insured, and the payment of back premiums, &c. The premium due on the 10th of December, 1851, was not paid until the 16th, when it was received by the insurers, without objection, and entered to the credit of the policy, and a receipt given for it. No evidence was produced in respect to the health of the insured, and none was required. The insured was, in fact, sick at the time, and died on the 19th of January, 1852, of the disease under which he was then laboring. It appeared that it had not been the practice of the insurers to exact prompt payment of the premiums, when due, but they had allowed the same to lie over several days, and then accepted them, without objection.

*Held*, that the conduct of the insurers had been such as to amount to a waiver of a literal compliance with the condition as to punctual payment; and that, the policy not having lapsed or become void, did not require renewal upon a disclosure of the state of the insured's health, within the meaning of that condition.

*Held also*, that such waiver restored the policy to the same condition in which it would have been, had the premium been paid on the precise day when it fell due.

THIS case came up on exceptions taken by the defendants on the trial at the circuit. The action was upon a policy of insurance issued by the defendants, upon the life of John C. Buckbee, in the sum of $1000, for the benefit of his wife, the plaintiff. The policy contained a clause by which it was declared and agreed that in case the declaration made by the insured, and upon the faith of which the policy was issued, should be found to be fraudulent in any respect, or that there was any willful misrepresentation or concealment in said declaration, or in case the wife should not pay the premiums on or before the several days specified for the payment of the same, then the policy should be void and of no effect. The policy was also made subject to the conditions and regulations printed on the back thereof. One of those conditions was that premiums of lapsed policies might be renewed at any time, on the production of satisfactory evidence as to the health of the insured, and payment in full for back premiums, with interest: a re-examination by a medical examiner of the company (at the expense of the insured) being in all

cases indispensable, when thirty days should have expired. The defendants alleged, in their answer, that the quarterly premiums on the policy were not duly paid to the company; that on the 10th of December, 1851, a premium of $10 became due to the company which was not paid on or before that day, and that thereupon the policy became lapsed and void; that on the 16th of December application was made to the agent of the company, in New-York, to renew the policy, when the applicant, in order to obtain such renewal, represented that the insured was then in good health; upon the faith of which representation the quarterly premium was received by the agent and by him indorsed on the policy. That such representation was false and fraudulent; that the insured was not then in good health, but was suffering from a lingering disease and dangerously ill, and known to be so, by the plaintiff and the applicant; that the insured died, soon after, of such disease; and that the receipt and indorsement of the premium were procured by false and fraudulent representations, and were not binding on the defendants, &c. The facts appearing in evidence on the trial are mentioned in the opinion of the court. The jury found a verdict for the plaintiff, for the sum insured, with interest.

*Wightman & Clark,* for the plaintiff.

*J. S. Sluyter,* for the defendants.

*By the Court,* CLERKE, J. John C. Buckbee, the husband of the plaintiff, insured his life with the defendants, in the sum of one thousand dollars, for the benefit of his wife. The premium of ten dollars quarterly was to be paid in advance; the first payment on the 10th March, 1851, when the policy was executed. It was provided that in case the premium should not be paid on the days specified, the policy should be void, but in such case it might be renewed at any time on the production of satisfactory evidence as to the health of the insured, and payment in full for back premiums, with interest; a re-examination by a medical examiner of the company (at the expense of the insured) being

Buckbee *v.* U. S. Insurance, Annuity and Trust Co.

in all cases indispensable, when thirty days should have expired. The premiums were not generally paid on the day on which they fell due, probably not in any instance—at all events, not on more than one of the four occasions; the first, which was payable on the 10th March, 1851, was not paid until the 4th April; the second, payable on the 10th June, *was not paid until the 12th July;* and it is not stated in the case when the third was paid; the fourth and last, payable on the 10th December, was paid on the 16th. Buckbee died on the 19th January, 1852, having suffered for nine weeks with a tuberculous disease of the stomach and liver, which terminated in his death. He was, therefore, far advanced in the disease at the time the last premium was paid. The defendants now insist that the policy having lapsed in consequence of the non-payment of the premium on the 10th of December, when it was payable, the plaintiff was bound under the first of the conditions, accompanying and forming a part of the policy, to disclose the state her husband's health at the time, and that not having done so, the policy was not renewed, but is void.

It will be borne in mind that in life insurances, after the original application is accepted, and the contract consummated, the insured has the benefit of the policy, whatever may happen to the health of the person whose life is insured, provided the insured complies with the condition of the contract. So that if the premium in this case had been paid on the 10th December, the plaintiff was under no obligation to say any thing about her husband's health, for whether he was sick or well, she was entitled to insure at the rate specified in the policy.

The question, therefore, is, whether the omission to pay the premium for six days after it became due required any different course of conduct on her part. A very great latitude as to the time of payment, it will be seen, was permitted by the defendants with regard to the former payments except one; and it does not appear that even that was paid on the day when it fell due; and such, I believe, is a very common, perhaps the most usual practice in insurance companies. The premium is never expected upon the precise day on which it falls due. The practice of the

defendants seemed to be very lax on this subject, and naturally induced the plaintiff to suppose that a literal compliance as to the hour and day of payment would no more be required on this than on the former occasions. They had the right, undoubtedly, at any time, to regard this short delay as a deviation from the terms of the contract, and before they received payment of the premium, to require evidence of the health of the insured; but it may be well doubted whether in this case they could enforce that right without notice to the plaintiff that they intended no longer, unless this evidence should be produced, to receive the payment of premiums as heretofore, after they became due. The premium, however, was accepted without objection; and according to the evidence of Thompson, not a word passed between him and the clerk who received it about Buckbee's health. At all events, it was received on the 16th December, entered to the credit of the policy, and a receipt given for it, thus placing the parties, in my opinion, precisely in the same condition as if it was paid on the 10th, when, it is admitted, that whatever was the condition of Buckbee's health, the policy remained in full force. Under the circumstances, then, time cannot be considered as the essence of such a contract; and it would be a very rigid, not to say inequitable interpretation, to say, that whatever might have been the previous practice of the defendants in waiting for payment of the premiums, if the insured avails himself of the indulgence constantly granted, although in a much less degree, and the health of a person whose life is insured fails in the meantime, the insurers are to be allowed to take advantage of the remissness which their own conduct, perhaps, occasioned.

It may therefore be well presumed that the delay of payment was not without the concurrence of the defendants. This being the case, there was a waiver of a literal compliance with the terms of the first condition, and in effect the policy did not require renewal, within the meaning of that condition; for in truth it was not lapsed. The precise time, indeed, specified in the contract, had elapsed; but judging from the acts of the parties, commencing with the acceptance of the original application, *the policy*, strictly speaking, *had not lapsed.* If this view is cor-

rect, it was not necessary to submit any questions to the jury relative to Buckbee's health, for, if the conduct of the defendants or their agents amounted to a waiver, and restored the policy to the same condition in which it would have been if the premium had been paid on the very day and hour on which it fell due, all inquiries of this kind were superfluous; if there was no waiver it is quite clear there could be no renewal, because the plaintiff had it not in her power, pursuant to its first condition, "to produce satisfactory evidence" as to her husband's health; for he was then, no doubt, far advanced in the disease which soon after caused his death. The judgment should be affirmed, with costs.

[NEW-YORK GENERAL TERM, November 6, 1854. *Mitchell, Morris* and *Clerke*, Justices.]